UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

RAHEEM SHABAZZ,

                       Petitioner,

                                                                                  9:02-CV-0939

v.                                                                      (LEK/GHL)

GARY H. FILION,

                       Respondent.
_____

APPEARANCES:                                                      OF COUNSEL:

OFFICE OF STEPHEN LANCE CIMINO          STEPHEN LANCE CIMINO, ESQ.
*Counsel for Petitioner*
307 South Clinton Street, Suite 300
Syracuse, NY 13202-1250

HON. ELIOT SPITZER                                   LUKE MARTLAND, ESQ.
Attorney General of the State of New York          Assistant Attorney General
*Counsel for Respondent*
120 Broadway
New York, NY 10271

GEORGE H. LOWE, UNITED STATES MAGISTRATE JUDGE

## **REPORT AND RECOMMENDATION**

      This habeas matter is before the Court for further proceedings in accordance with the mandate of the United States Court of Appeals for the Second Circuit. Dkt. No. 13.

**I.     PROCEDURAL BACKGROUND**

      Petitioner Raheem Shabazz was convicted of second degree robbery in Rennselaer County Court in 1996. On direct appeal the Appellate Division, Third Department, affirmed the conviction, and the Court of Appeals denied Shabazz leave to appeal on August 12, 1998. *People v. Shabazz*, 92 N.Y.2d 905 (1998).

On January 3, 2001 (according to a "Memorandum of Law Statement" attached to the petition (Dkt. No. 1 at 4)), Shabazz received in the mail an affidavit from one Michael Shackett ("Michael"), sworn to on January 2, 2001.[1] Shackett, the son of Shabazz's girlfriend, Barbara Shackett ("Barbara"), had testified at Shabazz's trial on behalf of the prosecution. In his affidavit Michael recanted certain of his trial testimony and alleged prosecutorial misconduct. On February 12, 2001, Shabazz filed a motion in state court to vacate his conviction pursuant to section 440 of the New York Criminal Procedure Law (the "440 Motion"), based upon the affidavit. The motion to vacate was denied on July 30, 2001. The Appellate Division, Third Department, denied Shabazz leave to appeal on October 23, 2001.

Shabazz's petition for habeas corpus relief pursuant to 28 U.S.C. § 2254 was filed in this Court on July 18, 2002. He had signed the petition on July 10, 2002, and I will deem it to have been filed on that date.[2] By Order of District Judge Lawrence E. Kahn, the petition filed by Shabazz was determined to be untimely under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") and was therefore dismissed. Dkt. No. 4. Shabazz appealed the dismissal of his petition to the Court of Appeals and sought a certificate of appealability ("COA") in connection therewith. Shabazz argued on appeal that, because his claims were based upon the new evidence from Michael, the timeliness of his petition should be determined with reference to the date on which he received the affidavit (January 6, 2001), not the date on which his state

---

[1] At a hearing in this Court Shabazz testified that he received the affidavit on January 5 or 6; I will assume that he received it on January 6, 2001.

[2] *See Rhodes v. Senkowski*, 82 F. Supp. 2d 160, 165 (S.D.N.Y. 2001) ("A pro se prisoner's papers are considered filed when they are handed over to prison officials for forwarding to the court . . . . Absent evidence to the contrary, the Court assumes that [petitioner] gave his petition to prison officials for mailing on the date he signed it . . . .") (citations omitted).

court conviction became final (November 12, 1998).  *See* Dkt. No. 13.

The Second Circuit determined that a ruling on petitioner's request for a COA was premature and remanded the matter to this Court for such further proceedings as may be necessary to determine the timeliness of the petition and, if timely, its merits.  Dkt. No. 13.  As stated by the Second Circuit in its mandate, it must be determined whether "Shabazz could, with due diligence, have discovered prior to January 2001 that Shackett – his girlfriend's son – was willing to recant his trial testimony and assert prosecutorial misconduct."  Dkt. No. 13.

## II.     PROCEEDINGS BEFORE THIS COURT

By Order dated March 17, 2004, the undersigned directed the petitioner to provide the Court with a signed affidavit detailing the events leading up to his receipt of the affidavit from Michael.  Petitioner was specifically directed to include in his affidavit facts relating to any correspondence or other communication between Shabazz and Michael, or Barbara, regarding Michael's decision to recant his trial testimony and his willingness to prepare and sign an affidavit to that effect.  Dkt. No. 16.  On April 1, 2004, in compliance with that Order, petitioner filed an "Affidavit Of Truth As Directed By This Court."  Dkt. No. 17; Court Ex. 1.  In that affidavit petitioner stated that "in the year of 2000" Michael had told him of his false trial testimony.  Viewing this statement as not being sufficiently specific, the Court determined that an evidentiary hearing would be necessary.

So that the respondent would have an opportunity to be heard, on May 13, 2004, the Court ordered the petition to be served on respondent and on the Attorney General, and scheduled a telephone conference call after service was effectuated.  Dkt. No. 18.  The conference call was held on June 23, 2004.  Respondent's counsel was directed to attempt to

ascertain the whereabouts of Barbara and Michael.

It was not until September, 2004, that Michael was located in the Western Regional Jail in West Virginia. Dkt. No. 34. The Court then appointed counsel to represent petitioner. The Court also appointed the Federal Public Defender for the Southern District of West Virginia to represent Michael, given the obvious Fifth Amendment issues presented by his possible testimony that he had lied at trial. Dkt. No. 38. An evidentiary hearing was scheduled for February 16, 2005. By letter dated January 10, 2005, Assistant Federal Public Defender Michael L. Desautels advised that Michael was unwilling to waive his Constitutional rights and was unwilling to testify at the hearing. Dkt. No. 41. The evidentiary hearing was adjourned to February 23, 2005. The petitioner appeared at the hearing, represented by appointed counsel, and testified. No other witnesses were called. Subsequent to the hearing, at the Court's request, respondent's counsel in February and May, 2005, submitted to the Court and petitioner's counsel certain documents, *i.e.*, the transcript of petitioner's 1996 trial in Rennselaer County Court (Court Ex. 2) and prison visitor logs (Court Ex. 3).

### III. TRIAL TESTIMONY AND MICHAEL'S RECANTING AFFIDAVIT

#### A. Michael's Trial Testimony

On May 14, 1996, at petitioner's trial, Michael, then aged eighteen, was called as a prosecution witness. (Court Ex. 2 at 355, 373.) After a few preliminary questions he asserted his Fifth Amendment privilege in response to the question: "And did there come a point in time that you had an opportunity to go inside of [a car owned by petitioner]?" (Court Ex. 2 at 356.)

Michael subsequently was granted immunity, (Court Ex. 2 at 363) and he then testified

4

that shortly after petitioner's arrest he looked in the trunk of the car and found a black pellet gun.[3] (Court Ex. 2 at 365, 368.)  He said he took the gun to his mother, Barbara, who in turn contacted "Mae" Pointer, petitioner's sister,[4] by telephone.  The sister told Michael that he should "get rid of the gun."  (Court Ex. 2 at 366.)  Barbara also told him "to get rid of it."  (Court Ex. 2 at 370.)  Michael then wrapped the gun in a plastic bag and threw it between a fence and a wall behind certain apartment buildings.  (Court Ex. 2 at 366, 371.)  After doing so, Michael went back to his mother and told her that he had gotten rid of it.  (Court Ex. 2 at 372.)

### B.     Michael's Recanting Affidavit

In his affidavit of January 2, 2001, Michael stated that he had been "threatened" by the prosecutor.  In particular, he stated:

> The District Attorney's Office specially demanded me to say what they wanted and did pressure me and instructed me about an issue involving a weapon that was discovered days after his arrest in a 1993 Sundance that was legally registered in Mr. Shabazz's name. Although there was no gun I was demanded by the D.A. Office to speak about the issue and let it be known to the jury and court.
>
> I was told by the District Attorney that if I didn't comply with the D.A. Office in regards to this matter, I would be charged with contempt of court and jail time would be imposed on me if I did not comply.  So I did out of fear of jail.
>
> I do hope that this information will be of assitance [sic] to help matters on the best behalf of Mr. Shabazz, and his case within the courts and be taken into deep consideration on behalf of Mr. Shabazz, which I swear to being the truth.

Dkt. No. 1, Ex. B.

---

[3] The victim of the robbery testified that the perpetrator had a black pistol.

[4] Michael referred to the sister as "Mae"; Barbara referred to her as "Melissa."

### C. Barbara's Trial Testimony

On May 16, 1996, two days after Michael testified, Barbara was called as a defense witness. (Court Ex. 2 at 454.) On cross-examination Barbara was asked about the gun. Her testimony essentially was consistent with Michael's. She testified that Michael had found a gun in the trunk of the car, that he had told her about it and asked her what he should do with it, that she then called petitioner's sister, who instructed her to have one of her sons "get rid of it." (Court Ex. 2 at 482-483.)

### IV. PETITIONER'S HEARING TESTIMONY

As stated above, petitioner was the sole witness at the hearing in this Court on February 23, 2005.[5] On cross-examination he testified that he had heard Michael's trial testimony about the gun, and knew it was false. (Hr'g 11:54:33 – 11:56:20, Feb. 23, 2005.) In response to a question by the Court he stated that he knew Michael was lying and that Michael's lie implicated his mother, Barbara. (Hr'g 12:08:37 – 12:09:04, Feb. 23, 2005.) According to petitioner, Barbara should have known that Michael was lying. (Hr'g 12:09:08 – 12:09:18, Feb. 23, 2005.) Petitioner told Barbara about this false testimony, and she replied "[t]hat's between you and Mike." (Hr'g 12:09:40 – 12:10:04, Feb. 23, 2005.) Petitioner could not recall whether Barbara had testified at trial that Michael had lied. (Hr'g 12:10:10 – 12:10:44, Feb. 23, 2005.)

Petitioner testified that he had a twenty years' relationship with Barbara, and following his conviction, and through the date of the hearing, he and Barbara continued to have a close relationship. She visited him in prison approximately every two weeks. During this period, he

---

[5] The Court's references are to the electronically recorded hearing, which was subsequently duplicated onto a CD.

and Barbara never discussed his trial or conviction. (Hr'g 11:50:00 – 11:51:09, Feb. 23, 2005.) At no time did he ask Barbara to provide him with an affidavit stating that Michael's trial testimony about the gun was a lie. (Hr'g 12:11:03 – 12:11:26, Feb. 23, 2005.) His reason for not having done so, he testified, was that he "didn't have knowledge of the law." (Hr'g 12:11:28 – 12:12:46, Feb. 23, 2005.) He did not inform Barbara about the hearing being held on February 23, 2005, concerning Michael's affidavit. (Hr'g 12:13:16 – 12:13:57, Feb. 23, 2005.) However, if she had been present at the hearing, according to petitioner, she would have testified under oath that Michael had lied at the trial. (Hr'g 12:14:00 – 12:14:14, Feb. 23, 2005.)

With regard to Michael recanting his trial testimony, petitioner testified that in 2000 while he was still at Attica Correctional Facility (he was transferred from Attica to Coxsackie Correctional Facility on or about November 9, 2000) (Hr'g 11:49:44 – 11:49:59, Feb. 23, 2005) Barbara visited him and said that Michael wanted to talk to him. He asked her what Michael wanted to talk about and she said "[h]e would speak to you about it" or "[t]hat's between you and Mike."[6] (Hr'g 11:41:35 – 11:44:44, Feb. 23, 2005.) On cross-examination petitioner testified that this conversation could have occurred during the period August through October 2000. (Hr'g 11:51:11 – 11:52:58, Feb. 23, 2005.) Prior to this time, according to petitioner, Michael was not living with Barbara, and she had "limited contact" with him. (Hr'g 12:02:05 – 12:02:38, Feb. 23, 2005.)

According to petitioner's testimony he subsequently was transferred from Attica to

---

[6] In the "Affidavit of Truth" (Dkt. No. 17) petitioner stated: "During my incarceration at Attica Correctional Facility, Ms. Shackett informed me that Michael had desired to speak with Petitioner in regards to what he had testified to in court at Petitioner's trial."

Coxsackie, and it was there that Michael, Michael's girlfriend, and a nephew visited him.[7] Petitioner and Michael had a discussion concerning Michael's trial testimony, after which petitioner asked Michael to put the information in an affidavit.[8]  Petitioner received the affidavit on January 5 or 6, 2001.  (Hr'g 11:44:59 – 11:47:07, Feb. 23, 2005.)

## V.     FINDINGS AND CONCLUSIONS

### A.     The One Year Limitations Period

The AEDPA prescribes a one-year limitations period for commencing a habeas corpus petition challenging a state court conviction.  Pursuant to 28 U.S.C. § 2244(d)(1) the one-year period runs from the latest of:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims

---

[7] At the hearing the Court requested that the prison visitor logs be produced, and respondent's counsel did so in May, 2005.  Court Ex. 3.  These records, which were not available at the hearing to confront petitioner with, reflect that on December 24, 2001, almost a year after he received Michael's affidavit, he was visited by Michael, Trisha Palmer, and Taylor Shackett.  Michael and Barbara both visited petitioner on November 23, 2000.

[8] In the "Affidavit of Truth" (Dkt. No. 17), petitioner stated: "Upon speaking with Michael Shackett, over the telephone, in the year of 2000, at Attica Correctional Facility, Mr. Shackett informed Petitioner that 'he' [the witness] knew that he lied to the District Attorney about the weapon (gun) being found in Petitioner's car . . . ."

>presented could have been discovered through the exercise of due diligence.

28 U.S.C. §§ 2244(d)(1)(A), (B), (C), (D).  In this case, the provisions of section 2244(d)(1)(D) are controlling.

As noted above, after receiving Michael's affidavit on January 6, 2001, petitioner on February 12, 2001, made a 440 Motion in County Court to vacate his conviction based upon the affidavit.  The motion was denied, and on October 23, 2001, the Appellate Division denied leave to appeal.  Shabazz filed his habeas corpus petition, which was signed on July 10, 2002, on July 18, 2002.  For statute of limitations purposes the operative date is July 10, 2002 (*see* footnote "2" above).

In other words, the statute of limitations ran from October 24, 2001, to July 9, 2002, *i.e.*, for 259 days.  In addition, Shabazz was in possession of Michael's affidavit at least by January 6, 2001, but did not file his 440 Motion until February 12, 2001, so the statute of limitations ran for this additional period of time, *i.e.*, for 36 days.  As a result, the statute of limitations ran for 295 days after January 6, 2001, leaving 70 days remaining in the one year period.  The issue before this Court, therefore, is whether "Shabazz could, with due diligence, have discovered prior to [October 28, 2000, *i.e.*, 70 days prior to January 6, 2001] that Shackett – his girlfriend's son – was willing to recant his trial testimony and assert prosecutorial misconduct." Dkt. No. 13.  *See Wims v. United States*, 225 F.3d 186 (2d Cir. 2000).

### B. Burden of Proof

Petitioner has the burden of proof on this issue.  "Although the statute of limitations is an affirmative defense, courts addressing the relative burdens under § 2244(d)(1)(D) have concluded

9

that the petitioner bears the burden of persuading the court that he exercised due diligence in discovering the factual predicate of his habeas claim." *Thompson v. Hill*, Civ. No. 03-0255, 2004 WL 2473303, at *2 (D. Or. Nov. 3, 2004) (citations omitted). *See Yekimoff v. N.Y.S. Div. of Parole*, Civ. No. 02-8710, 2004 WL 1542256, at *5 (S.D.N.Y. July 8, 2004) ("It is Petitioner's burden to demonstrate why he was unable to discover the factual predicate of his claim before the date asserted.") (citation omitted); *Adams v. Greiner*, 272 F. Supp. 2d 269, 274-275 (S.D.N.Y. 2003) (dismissing habeas petition in part because petitioner "offer[ed] no explanation, elaboration, or detail as to why he could not have obtained [the] information" earlier); *Savedra v. Dretke*, Civ. No. 03-1789, 2005 WL 900949, at *3 (N.D. Tex. Apr. 19, 2005) ("The burden is on the petitioner to persuade the court that he has exercised due diligence.") (citation omitted); *Brooks v. McKee*, 307 F. Supp. 2d 902, 906 (E.D. Mich. 2004) ("A habeas petitioner has the burden of persuading a federal court that he exercised due diligence in discovering the factual predicate of his habeas claims.") (citation omitted); *Wilson v. Beard*, Civ. No. 02-0374, 2003 U.S. Dist. LEXIS 9737, at *21 (E.D. Pa. May 8, 2003) ("Caselaw is clear . . . that the burden is on the petitioner to credibly explain why a 'reasonable investigation' would not have discovered the newly discovered facts [which began the running of the statute of limitations under § 2244 (a)(1)(d)] at an earlier time.") (citation omitted); *Frazier v. Rogerson*, 248 F. Supp. 2d 825, 833 (N.D. Iowa 2003) ("The burden is on the petitioner to persuade the court that he has exercised due diligence.") (citation omitted).[9]

---

[9] At the hearing on February 23, 2005, petitioner's counsel conceded that petitioner had the burden of proof. (Hr'g 12:15:31 – 12:15:45, Feb. 23, 2005.) Subsequently, by letter dated April 11, 2005, the Court directed both counsel's attention to footnote "14" in *Rosario v. Bennett*, Civ. No. 01-7142, 2002 WL 31852827 (S.D.N.Y. Dec. 20, 2002), and requested letter-briefs on the burden of proof issue. Dkt. No. 45. Petitioner's counsel responded by letter dated April 19, 2005, and argued that the

### C. Petitioner's Diligence from May, 1996, Through October, 2000

Having listened to and observed petitioner's testimony at the hearing, I do not find him to be credible. First I note, as reflected in footnotes "5," "6," and "7" above, inconsistencies between petitioner's testimony at the hearing, statements in his "Affidavit of Truth," and documentary evidence. In addition, when the Court asked petitioner whether Barbara's trial testimony had been that Michael had lied, he said he could not recall. I find it incredible that petitioner did not recall that in fact Barbara's trial testimony about the gun was **essentially consistent** with Michael's. Given this consistency between Michael's and Barbara's testimony, it is similarly incredible that petitioner testified that if Barbara had appeared at the February 23, 2005 hearing, she would have stated under oath that Michael had lied at the trial.

Furthermore, and accepting *arguendo* petitioner's version of events, he clearly did not exercise due diligence. He "knew" on May 14, 1996, that Michael lied about the gun on the witness stand. Michael's lie, petitioner testified, implicated Barbara, and petitioner told Barbara about the false testimony. However, following his conviction on May 16, 1996, through the critical date of October 28, 2000, a period of over **four** years, he **never** discussed Michael's false

---

respondent had the burden of proof, in light of footnote "14," which provides:

> *See*, *e.g.*, *Acosta v. Artuz*, 221 F.3d 117, 121-22 (2d Cir. 2000) (AEDPA statute of limitations is an affirmative defense, not a jurisdictional bar, and State bears burden of proof); *Smith v. McGinnis*, 208 F.3d 13, 17 (2d Cir. 2000) (AEDPA limitations period is statute of limitations not jurisdictional bar), *cert. denied*, 531 U.S. 840 (2000); *Overall v. Estate of Klotz*, 52 F.3d 398, 403 (2d Cir. 1995) ("Because the statute of limitations is an affirmative defense, the defendant bears the burden of establishing by prima facie proof that the limitations period has expired since the plaintiff's claims accrued.").

Dkt. No. 47. Respondent's counsel submitted a letter dated April 21, 2005, arguing that *Rosario* and the cases cited in footnote "14" were distinguishable, and referencing several of the cases cited above. Dkt. No. 48. The Court agrees with the thorough analysis set forth in respondent's counsel's letter.

testimony with Barbara, even though she visited him in prison approximately every two weeks. In addition, during the same four years' period he never discussed with Barbara any aspect of the trial or his conviction, nor did he ever ask Barbara to provide him with an affidavit stating that Michael's trial testimony about the gun was a lie.[10] This testimony, and petitioner's claimed excuse that he "didn't have knowledge of the law,"[11] is, I find, not credible. However, if it were credible, it would reflect an astonishing lack of due diligence.

I do not credit petitioner's wholly conclusory **hearsay** testimony that, for some undefined period of time, Michael was not living with Barbara and that she had "limited contact" with him. Even if this testimony were credible, petitioner has made no claim that during this undefined period he was trying to communicate with Michael about the false testimony. This alone reflects a monumental lack of due diligence.

Petitioner has presented no evidence, or even claimed, that he ever discussed with his sister, Melissa or Mae Pointer, Michael's allegedly false testimony. Ms. Pointer could have testified, or submitted an affidavit, stating that neither Michael nor Barbara ever called her about a gun, and that she never gave advice that anyone should "get rid of" a gun.

Perhaps most telling, petitioner did not call Barbara as a witness at the hearing in this

---

[10] Indeed, petitioner never had such a discussion with Barbara over a period of almost **nine** years, *i.e.*, from May 16, 1996, through the date of the hearing on February 23, 2005. (Hr'g 12:11:03 – 12:11-26, Feb. 23, 2005.)

[11] The date of recognition of the **legal significance** of facts is irrelevant. *See Brooks v. McKee*, 307 F. Supp. 2d 902, 905-906 (E.D. Mich. 2004) (" . . . the AEDPA's limitations period begins to run when the petitioner knows or thorough due diligence could have discovered the important facts for the claim, not when the petitioner recognizes the facts' legal significance."); *Adams v. Greiner*, 272 F. Supp. 2d at 274 (citing *Owens v. Boyd*, 235 F.3d 356, 359 (7th Cir. 2000) ("Time begins when the prisoner knows (or thorough diligence could discover) the important facts, not when the prisoner recognizes their legal significance.")).

Court. He continued, as of the date of the hearing, to have a close relationship with her, and she continued to visit him regularly. Yet, according to petitioner's testimony, he did not even inform her that the hearing was going to be held. Barbara could have been a critical witness (again, accepting *arguendo* petitioner's version of events). She could have confirmed that Michael's trial testimony was false, clarified and expanded upon petitioner's claim that she had "limited contact" with Michael for some period of time, and in general she might have come up with some explanation as to why Michael would not have recanted earlier even if petitioner had pursued the issue vigorously and with due diligence. Yet petitioner, having the burden of proof, failed to call her as a witness.

This highlights the paradoxical nature of the foregoing discussion and analysis of the issue as to whether petitioner acted with due diligence in trying to discover that Michael would recant. Underlying that discussion and analysis is an acceptance, *arguendo*, of petitioner's version of events. But it is not easy to suspend disbelief in this respect. It is not easy to disregard the fact that Barbara testified at the trial two days after Michael did, and that her testimony about the black gun essentially was **consistent** with Michael's.[12] It is not easy to avoid concluding that Michael's trial testimony about the gun was **truthful**, and known by petitioner to be truthful, which would explain petitioner's total failure to do virtually anything with respect to Michael's "false" testimony from 1996 through late 2000.

In any event, I find that petitioner has not met his burden of persuading me that he acted with due diligence. Indeed, I find by clear and compelling evidence that he failed to exercise due

---

[12] The trial transcript was not produced until May, 2005, approximately three months after the hearing. Therefore petitioner never was questioned about this seemingly fatal flaw in his version of events.

13

diligence.

However, having made this finding, further analysis remains: what is the "factual predicate" of petitioner's habeas claim, within the meaning of section 2244(d)(1)(D)? Was it (1) knowledge that Michael had lied, or (2) knowledge that Michael was willing to recant, or (3) physically obtaining the affidavit?

The latter would appear not to be the answer. In its mandate in this case the Court of Appeals stated that the critical date is "not the date a prisoner may have received the information in hand." Dkt. No. 13.

If the critical date is when the petitioner learned that Michael had lied on the witness stand, it is acknowledged by petitioner that he knew this on May 14, 1996, when Michael testified. In this context the statute of limitations would have run on November 12, 1999, a year after his conviction became final, unless the statute was equitably tolled through October 28, 2000. However, as the Second Circuit stated recently in *Walker v. Jastremski*, 430 F.3d 560, 564 (2d Cir. 2005):

> We have applied equitable tolling only in "rare and exceptional circumstances," where we found that "extraordinary circumstances" prevented a party from timely performing a required act, and that the party "acted with reasonable diligence throughout the period he [sought] to toll." *Doe v. Menefee*, 391 F.3d 147, 159 (2d Cir. 2004) (internal quotation marks omitted).

Here, given my unequivocal finding that petitioner failed to exercise due diligence for the entire period of 1996 through the Fall of 2000, equitable tolling is not applicable.

Finally then, is the critical date the date when, with due diligence, petitioner could have learned that Michael was willing to recant? The Second Circuit's mandate indicates that this

14

indeed is the critical date ("determine whether Shabazz could, with due diligence, have discovered prior to January 2001 that Shackett – his girlfriend's son – was willing to recant his trial testimony."  Dkt. No. 13).  However, only petitioner and Michael, and perhaps Barbara based upon hearsay information, are in a position to shed light on this date.  I have found petitioner's testimony not to be credible, and Michael and Barbara did not testify at the hearing, nor was any other evidence presented on petitioner's behalf on this issue.  Under these circumstances I find that petitioner has not persuaded me that with due diligence he could have learned that Michael was willing to recant only after October 28, 2000.  Therefore I find that his habeas corpus petition was not timely filed and I recommend that it be dismissed.[13]

**ACCORDINGLY**, it is hereby

**RECOMMENDED**, that the petition herein (Dkt. No. 1) be dismissed as untimely under 28 U.S.C. § 2244(d)(1); and it is further

**ORDERED**, that, without prepayment of the fee, the Clerk of the Court provide counsel for petitioner and respondent with a CD recording of the electronically recorded hearing, which took place on February 23, 2005.  *See* Minute Entry dated Feb. 23, 2005.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.

---

[13] The Court is mindful that "the goal of the AEDPA [is] to prevent undue delays in federal habeas review." *Smith v. McGinnis*, 208 F.3d 13, 17 (2d Cir. 2000).  As stated in *Vidro v. United States*, (in dismissing a habeas petition brought under section 2255(4), which is a similarly worded provision) "[e]ssentially, the AEDPA proscribes petitioners from "sleeping" on the *assessment* of their rights . . . . Any other interpretation of the limitations scheme under § 2255 would enable a petitioner to impermissibly circumvent the time restraints that Congress clearly meant to impose when it enacted the AEDPA." *Vidro v. United States*, Civ. No. 01-1309, 2003 WL 22871691, at *2 n.2 (D. Conn. Dec. 1, 2003) (emphasis in original).

**FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

Dated: January 25, 2006
      Syracuse, New York

George H. Lowe
United States Magistrate Judge